IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MICHAEL and LAKISHA AUTRY, | : |
|     Plaintiffs, | : |
| v. | :  CA 2:12-00509-KD-C |
| LIBERTY MURUAL GROUP, INC., | : |
|     Defendant. | : |

## REPORT AND RECOMMENDATION

This matter was removed from the Circuit Court of Wilcox County, Alabama on August 15, 2012 (*see* Doc. 1), and, shortly thereafter, on August 22, 2012, the defendant filed a motion to dismiss (Doc. 2), which has been referred to the undersigned, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2.  The plaintiffs' response to that motion was due on September 7, 2012 (*see* Doc. 4), but no response was filed.  Instead, on September 12, 2012, the plaintiffs filed a motion to remand (Doc. 8), which has also been referred to the undersigned.

As outlined in the September 13, 2012 Order (Doc. 9), although the motion to dismiss was filed first, because the motion to remand raises the threshold question of this Court's subject-matter jurisdiction, it must be addressed first (*see id.* ("Absent federal jurisdiction, this Court lacks the power to decide [the] pending Motion to Dismiss, and must immediately remand this action to state court without reaching the question of whether Plaintiffs have stated cognizable claims against [the] Defendant[].") (quoting *Wilks v. Callahan*, Civil Action No. 08–638–CG–M, 2009 WL 2243702, at *3 (S.D. Ala. July 24, 2009) (citing, in turn, *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1261 (11th Cir. 2000); *University of S. Ala. v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999)))).

The defendant has filed a response in opposition to the motion to remand and reply in support of its motion to dismiss (Doc. 10), but the plaintiffs did not file a reply in support of their motion to remand.

After careful consideration of the parties' briefing and the pleadings, and for the reasons discussed herein, it is **RECOMMENDED** that the motion to remand (Doc. 8) be **GRANTED** and that this matter be **REMANDED** to the Circuit Court of Wilcox County, Alabama.  Because the undersigned has determined that this Court lacks subject-matter jurisdiction, it is **FURTHER RECOMMENDED** that the motion to dismiss (Doc. 2) be **DENIED WITHOUT PREJUDICE** to being reasserted in the state court after remand.

## Background

In their complaint (Doc. 1-1), filed in state court in Wilcox County on July 12, 2012, the plaintiffs, Michael and LaKisha Autry, assert four claims against their homeowners' insurance provider, Liberty Mutual—for breach of contract, bad faith, misrepresentation, and negligent misrepresentation.[1]  According to their complaint, on April 2, 2011, their home, given to them by Mr. Autry's mother, caught fire and burned to the ground.  (*Id.*, ¶ 5.)  They further assert that after receiving the home from Mr. Autry's mother, and prior to the fire, Ms. Autry contacted the defendant, Liberty Mutual to obtain homeowners' insurance and, when asked, advised Liberty that the

---

[1] A verified copy of the policy's declaration page is attached to the notice of removal (Doc. 1-2, Ex. 1; *see also id.*, ¶ 3).  According to it, the policy became effective on January 4, 2011 and, through its Section I, extends coverage for Dwelling and Expanded Replacement Cost ($74,000 limit); Other Structures on Residence Premises ($7,400 limit); Personal Property with Replacement Cost ($55,500 limit); and Loss of Use of Residence Premises (limit set as "Actual Loss Sustained").  All of these covered losses are subject to a $1,000 deductible.

approximate value of the home was $50,000.  (*Id.*, ¶ 6.)  Also according to the plaintiffs, after the fire, which Liberty determined to be natural and non-intentional, Liberty first attempted to deny their claim for non-payment of premiums and later attempted to deny their claim on the basis that Ms. Autry misrepresented that they *purchased* the home for $50,000—something the plaintiffs deny (after giving them the home, Mr. Autry's mother remained on the deed).  (*See id.*, ¶¶ 7-9.)

After Liberty denied the plaintiffs' claim in late August, 2011, their counsel, Mr. Gilmore wrote to Liberty, on September 2, 2011, "demanding $74,000[—]the amount of dwelling coverage that is available on the house."  (Doc. 8-2, Gilmore Aff., Ex. 1.)  Liberty responded on September 19, 2011,

> offering to reform [the plaintiffs' policy] to provide the coverage for which Ms. Autry may have qualified, had she made a full disclosure to us regarding the ownership of the home.  Under that policy, a renter's policy, we would extend coverage to Ms. Autry's damaged personal property, as well as her additional living expenses.
>
> If Ms. Autry consents to handling this matter in this way, please have her complete the enclosed proof of loss for her damaged personal property and return it to [us] so that we can proceed with settling the claim in this manner.

(Doc. 2, Ex. C.)[2]

Mr. Gilmore again wrote to Liberty on October 6, 2011, "offering[, again,] to settle the entire matter for $74,000.00."  (Doc. 8-2, ¶ 4 & Ex. 2.)

From the filings before the Court, it appears that the plaintiffs received a check from Liberty, dated December 27, 2011, for $34,583.53 (*e.g.*, Doc. 8-1, Ex. A to the motion to remand).  The plaintiffs characterize this check as being "for the contents of the

---

[2]   An undated Property Loss Schedule, signed by Ms. Autry, appears at Doc. 8-1 at 2-7.

home" (Doc. 8 at 1), which is consistent with their complaint, in which they contend that "[t]he contents portion of [their] claim has been handled, leaving *only* the dwelling portion of the claims to be in dispute.  The amount of dwelling coverage is $74,000.00." (*Id.*, ¶ 10 (emphasis added); *see also* Doc. 8-2, ¶ 2 (in which the plaintiffs' counsel represents to this Court that, on December 27, 2011, prior to the filing of the state court complaint, he "was able to settle the contents portion of [his] client's policy . . . for $34,583.53" and further provides, "There is no dispute with the Defendant as to the contents coverage of the policy.").)   The defendant, however, contests this characterization of the settlement with the plaintiffs/Liberty's December 27, 2011 Payment.  In its motion to dismiss (Doc. 2), Liberty asserts that, after it denied the plaintiffs' claim in September, 2011, it sent plaintiffs' counsel

> a settlement letter stating that although it had determined that the claim was not payable nor the policy valid, it would nonetheless pay for the loss of Plaintiffs' contents, which amounted to $34,583.33, to resolve Plaintiffs' claim in its entirety.  Liberty subsequently sent a check payment for the settlement amount to Plaintiffs, which Plaintiffs cashed on February 2, 2012.  In cashing the check, Plaintiffs included the following restrictive endorsement: "Settlement of [illegible] and property coverage, only; nothing is to be construed by the endorsement of this check, that any portion of the dwelling coverage is being settled or releasing Liberty Mutual for action arising under dwelling coverage."
>
> Five months <u>after</u> cashing the check, Plaintiffs filed the present action seeking damages of well over $75,0000 in addition to unspecified damages for punitive damages and mental anguish.  Plaintiffs' action, however, is baseless because Plaintiffs have already accepted Liberty's $34,583.33 settlement payment for the resolution of the entire claim at issue in this case.

(*Id.* at 2-3 (further asserting that the plaintiff's breach of contract claim is barred by the doctrine and defense of accord and satisfaction and that their remaining claims are not viable as a matter of law) (citations omitted and emphasis in original).)

4

On August 27, 2012, after this matter was removed to this Court and after Liberty filed its motion to dismiss, Mr. Gilmore wrote to Liberty's counsel, "offering to settle the entire matter for $65,000.00."   (Doc. 8-2, ¶ 5 & Ex. 3.)   Finally, in support of their motion to remand, the plaintiffs have each filed affidavits stating that they "will not seek more nor accept more than $74,900.00, should this matter be sent back to State Court, in regards to [their] claims."   (Docs. 8-3; 8-4.)

## Discussion

### 1.    The Removal Inquiry.

"Any civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court."   *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996) (citing 28 U.S.C. § 1441(a)), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). And a federal court may exercise diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states.   28 U.S.C. § 1332(a)(1).   Nevertheless, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly . . . .   Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court."   *University of S. Ala.*, 168 F.3d at 411; *cf. D.M.C. Enters. Inc. v. Best McAllister, LLC*, Civil Action No. 10-00153-CB-N, 2010 WL 3039477, at *2 (S.D. Ala. Aug. 4, 2010) ("Because it is conferred by statute, the right of removal is strictly construed to limit federal jurisdiction.") (citing *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996)).

Therefore, the defendant must establish the propriety of removal under section 1441 and, for that reason, "bears the burden of establishing the existence of federal jurisdiction[,]" *Brown v. Kabco Builders, Inc.*, Civil Action 07-0099-WS-C, 2007 WL 841690, at *1 (S.D. Ala. Mar. 15, 2007) (citing *Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002)), which requires that the defendant, one, establish complete diversity—that the plaintiffs are diverse from the defendant, *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (citation omitted)—and, two, show that the amount in controversy more likely than not exceeds the $75,000 jurisdictional requirement, *see Fitzgerald v. Besam Automated Entrance Sys.*, 282 F. Supp. 2d 1309, 1314 (S.D. Ala. 2003). Liberty has made a satisfactory showing (*see, e.g.,* Doc. 1, ¶¶ 2-5)—and the plaintiffs do not contest the fact (*see* generally Doc. 8)—that complete diversity exists. *See Triggs*, 154 F.3d at 1287. Therefore, the only issue before the Court is whether the minimum amount in controversy has been established.

"When, as here, damages are not specified in the state court complaint, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the jurisdictional requirement." *Pate v. State Farm Mut. Auto. Ins. Co.*, No. 3:10cv223/MCR/EMT, 2010 WL 3372195, at *1 (N.D. Fla. Aug. 25, 2010) (citations and internal quotation marks omitted); *see Fitzgerald*, 282 F. Supp. 2d at 1314 ("When the state court complaint is indeterminate, then an intermediate burden[—preponderance of the evidence—]is placed upon the removing defendant since there is no representation by plaintiff's counsel that would be entitled

to deference.") (citing *Tapscott*, 77 F.3d at 1356-57).[3]   And because Liberty removed this case under the first paragraph of Section 1446(b) (*see* Doc. 1, ¶¶ 6, 7), the Eleventh Circuit's decision in *Roe v. Michelin North America, Inc.*, 613 F.3d 1058 (11th Cir. 2010), guides the undersigned's analysis.  *See id.* at 1062 (characterizing that case as a "§ 1446(b) first-paragraph case[ ] in which the plaintiff does not make a specific damages demand").[4]   In *Roe*, the Eleventh Circuit instructed:

---

[3]   Both the defendant, in its notice of removal, and the plaintiffs, in their motion to remand, agree that the complaint requests an unspecified amount of damages and, thus, preponderance of the evidence is the applicable burden of proof.  (*Compare* Doc. 1, ¶ 8, *with* Doc. 2, ¶ 8.)  However, in its response to the motion to remand, the defendant contends that the "[p]laintiffs in this case clearly specified a damages amount[,]" citing the complaint's reference to the policy cap on dwelling coverage and plaintiffs' statement that they have been damaged because, *inter alia*, "they have lost the use and enjoyment of their home" (construing that statement as a reference to policy's loss of use coverage).  (*See, e.g.*, Doc. 10 at 3 (citing Doc. 1-1, complaint, at ¶¶ 10, 14, 21, 27).)  While the response to the motion to remand fails to provide whether these contentions mean that preponderance is no longer, in the defendant's view, the proper burden of proof, it appears clear that even where insurance coverage amounts/policy limits are specifically invoked, preponderance of the evidence remains the standard of proof.  *See, e.g., Zapata v. Allied Prop. & Cas. Ins. Co.*, No. 8:12CV193, 2012 WL 3527731, at *2-3 (D. Neb. Aug. 15, 2012) (in which the defendants argued that, in determining the amount in controversy, the court should consider, among other things, that the policy had limits of $120,000, the court ultimately found that the defendants had "not proven by a *preponderance* of the evidence that, at the time of removal, Zapata's claims exceeded $75,000.00.  Indeed, a district court is required to resolve all doubts about federal jurisdiction in favor of remand.") (citations omitted and emphasis added).

[4]   Congress, through § 1446(b), has established a "bifurcated removal approach," *Lee v. Lilly Trucking of Va., Inc.*, No. 2:12–cv–74–MEF, 2012 WL 960989, at *1 (M.D. Ala. Mar. 21, 2012), under which

> a state court defendant may remove a case to federal court at two procedurally distinct moments in time.  First, if it is facially apparent from the initial pleading that subject matter jurisdiction exists, § 1446(b)(1) provides the procedure for removal.  *See, e.g., Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010); *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001).  Such a removal must be accomplished "within 30 days after the receipt by the defendant . . . of a copy of the initial pleading setting forth the claim for relief upon which such action is based . . . ."  § 1446(b)(1).  However, "[i]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be

> If a defendant alleges that removability is apparent from the face of the complaint, the district court must evaluate whether the complaint itself satisfies the defendant's jurisdictional burden. In making this determination, the district court is not bound by the plaintiff's representations regarding its claim, nor must it assume that the plaintiff is in the best position to evaluate the amount of damages sought. [*Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 771 (11th Cir. 2010).] Indeed, in some cases, the defendant or the court itself may be better-situated to accurately assess the amount in controversy. *See id.* (explaining that "sometimes the defendant's evidence on the value of the claims will be even better than the plaintiff's evidence," and that a court may use its judgment to determine "which party has better access to the relevant information.").
>
> Eleventh Circuit precedent permits district courts to make "reasonable deductions, reasonable inferences, or other reasonable extrapolations" from the pleadings to determine whether it is facially apparent that a case is removable. *See id.* at 754. Put simply, a district court need not "suspend reality or shelve common sense in determining whether the face of a complaint . . . establishes the jurisdictional amount." *See id.* at 770 (quoting *Roe v. Michelin N. Am., Inc.*, 637 F. Supp. 2d 995, 999 (M.D. Ala. 2009)); *see also Williams*[ *v. Best Buy Co., Inc.*], 269 F.3d [1316,] 1319 (11th Cir. 2001) (allowing district courts to consider whether it is "facially apparent" from a complaint that the amount in controversy is met). Instead, courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements.

---

ascertained that the case is one which is or has become removable . . . ." § 1446(b)(3); *see also Lowery v. Ala. Power Co.*, 483 F.3d 1184 (11th Cir. 2007).

*Id.*

The requisite amount-in-controversy showing "turns on which provision of [§ 1446(b)] applies to a particular case[.]" *Newton v. BP P.L.C.*, No. CA 1:12–00205–KD–C, 2012 WL 2417335, at *2 n.4 (S.D. Ala. June 8, 2012), *report & recommendation adopted*, 2012 WL 2401791 (S.D. Ala. June 26, 2012) (citations omitted); *see also Rola v. Wal–Mart Stores, Inc.*, No. 6:11–cv–468–Orl–28DAB, 2011 WL 3156672, at *5–6 (M.D. Fla. June 29, 2011) (same) (citing *Roe*, 613 F.3d at 1061 n.4), *report & recommendation adopted*, 2011 WL 3111965 (M.D. Fla. July 26, 2011); *cf. Wilson v. Chester Bross Constr. Co.*, No. CA 11–0020–KD–C, 2011 WL 1380052, at *12 (S.D. Ala. Apr. 12, 2011) (DuBose, J.) ("[T]he first paragraph of § 1446(b) provides a much wider entry into federal court than does the second paragraph of that section.") (citing *Pretka*, 608 F.3d at 760).

613 F.3d at 1061-62.[5]   Thus, at least in the context of a Section 1446(b) first-paragraph removal case in which the plaintiff does not make a specific damages demand—such as this one—a district court should employ "its judicial experience or common sense in discerning whether the allegations in a complaint facially establish the jurisdictionally required amount in controversy."   *Roe*, 613 F.3d at 1063.

### 2. *Analysis*

The undersigned begins by determining which aspect(s) of the insurance policy are at issue.  The plaintiffs, as masters of their complaint, have characterized this lawsuit as one solely concerning the dwelling portion of the policy.[6]  (*E.g.*, Doc. 1-1, ¶ 10.)   This is significant for several reasons, the first of which is Liberty's theory that the policy limit for dwelling coverage ($74,000) can be aggregated with the amount that Liberty has already paid the plaintiffs in coverage for Loss of Use ($3,208.59) (*see* Doc.

---

[5] The Eleventh Circuit further stated that the approach announced in *Roe* "is consistent with those of other circuits," *id.* at 1062, specifically citing, *inter alia*, two Fifth Circuit cases—*Luckett v. Delta Airlines, Inc.*, 171 F.3d 295 (5th Cir. 1999), and *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880 (5th Cir. 2000).   *See* 613 F.3d at 1062-63.   *Luckett* and *Gebbia* both demonstrate that "the Fifth Circuit has repeatedly acknowledged the power of district court judges to appraise the worth of plaintiffs' claims based on the nature of the allegations stated in their complaints."   *Id.* at 1063; *see Luckett*, 171 F.3d at 298; *Gebbia*, 233 F.3d at 833; *cf. Purdiman v. Organon Pharms. USA, Inc.*, Civil Action No. 2:08-CV-0006-RWS, 2008 WL 686996, at *2 (N.D. Ga. Mar. 12, 2008) (pre-*Roe*) (citing both *Luckett* and *Gebbia*, and holding that "[a]lthough the Complaint excludes any reference to the amount of damages Plaintiff has sustained as a result of Defendant's allegedly tortious conduct, after full review and consideration, the Court concludes that is it apparent from the factual allegations in the Complaint that the amount in controversy in this action exceeds $75,000").

[6] While *Roe* and *Pretka* teach us that a court is "not bound by the plaintiff's representations regarding its claim," *Roe*, 613 F.3d at 1061 (citing *Pretka*, 608 F.3d at 771), given the mandate that removal statutes be construed strictly, *see, e.g., University of S. Ala.*, 168 F.3d at 411, a court should show deference to how a plaintiff chooses to characterize the claim(s) in his or her complaint, *see, e.g., Perl v. Laux/Arnold, Inc.*, 864 F. Supp. 2d 731, 743 (N.D. Ind. 2012) (deferring to, but also holding plaintiffs, "the masters of their own complaint," accountable for, their "clear[]" characterization of a claim as one under state law and not as a claim "that Defendants have violated ERISA in any way").

1-2, Ex. 4 & ¶ 6) to reach an amount that exceeds the $75,000 jurisdictional minimum. The undersigned will discuss this argument in more detail below, but it should be noted first that there is no need to decide the matter the parties spend much of their briefs contesting—the propriety of the plaintiffs' *post-removal* affidavits. Certainly, "in determining its subject-matter jurisdiction, this Court is not concerned with the plaintiffs' present or future intentions; the critical point in time is, instead, when the case was removed." *Brantley v. Bassett*, No. CA 2:11–591–CG–C, 2011 WL 6288119, at *1 (S.D. Ala. Nov. 29, 2011) (citing *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1295 (11th Cir. 2008) ("The existence of federal jurisdiction is tested at the time of removal."); *Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 n.2 (11th Cir. 2007) ("[T]he district court must look at the case at the time of removal to determine whether it has subject-matter jurisdiction")), *report & recommendation adopted*, 2011 WL 6260652 (S.D. Ala. Dec 15, 2011). *But* Liberty has not carried its burden—as the party invoking federal jurisdiction—to show that the amount in controversy more likely than not met the jurisdictional requirement *when it removed this matter*.

As explained below, to determine whether it is apparent from the face of the plaintiffs' complaint that the amount in controversy more likely than not exceeds the jurisdictional requirement requires a focus on what the plaintiffs have concretely placed into controversy—here, the denial of their claim for dwelling coverage. Although the Court knows the limit on the dwelling coverage and what Ms. Autry represented regarding the value of the home before the fire, Liberty has not proven the value of the plaintiffs' denied claim or the amount of damage to the home. Further, in determining the amount in controversy, it is not proper to consider, one, amounts already paid to the

plaintiffs under the policy (for example, for "Loss of Use") and, two, amorphous requests for punitive damages, attorneys' fees, and mental anguish. But the Court may consider the plaintiffs' pre-removal intentions as to claimed damages.

### a. Dwelling coverage.

Under the policy, the limit for dwelling coverage is $74,000.00. (*See* Doc. 1-2, Ex. 1.) While this amount alone is insufficient to meet the jurisdictional minimum, it is also clear that

> [i]n determining the amount in controversy in the insurance context, numerous courts have held that "it is **the value of the claim, not the value of the underlying policy,** that **determines the amount in controversy**." *Kelly v. General Star National Indemnity Co.*, No. 8:07-CV-1143-JDW-TGW, 2007 WL 3034654, * 2 (M.D. Fla. Oct. 16, 2007); *see also Hartford Ins. Co. v. Lou-Con, Inc.*, 293 F.3d 908, 911 (5th Cir. 2002) (stating that in declaratory judgment cases, the jurisdictional amount is measured by the value of the underlying claim and not the face amount of the policy); *Employers Mutual Casualty Co. v. Parking Towing Co., Inc.*, No. 07-0684-WS-B, 2007 WL 4577705, *2 (S.D. Ala. Dec. 27, 2007) ("a high policy limit does not establish a large amount in controversy for the simple reason that the underlying plaintiff's claim may be for far less than the policy limit"); *Warth v. State Farm Fire & Casualty Co.*, 792 F. Supp. 101, 103 (M.D. Fla. 1992) ("[d]ue to the fact that [the] [p]laintiffs in this case have not plead or represented to this Court the damages they seek, the face amount of the [insurance] policy does not control on the issue of the threshold jurisdictional amount").

*Martins v. Empire Indem. Ins. Co.*, No. 08-60004-CIV, 2008 WL 783762, at *2 (S.D. Fla. Mar. 21, 2008) (where state court complaint alleged breach of an insurance contract, which provided coverage exceeding $300,000, because defendant failed to pay damages for losses to plaintiff's property caused by hurricane force winds, concluding "that the sole evidence provided by Defendant, i.e., the policy limits for Plaintiff's insurance policy, does not meet Defendant's burden of establishing that the jurisdictional amount in controversy has been met[,]" and granting motion to remand) (emphasis added); *accord*

*Potts v. Southern Fid. Ins. Co.*, Civil Action No. 10–3039, 2011 WL 289239, at *3 (E.D. La. Jan. 25, 2011); *see also John L. Crosby, Inc. v. Scottsdale Ins. Co.*, Civil Action No. 09–1243, 2009 WL 1941258, at *3 (E.D. La. July 2, 2009) ("[I]n cases concerning insurance policies, the relevant inquiry to determine the amount in controversy is the ***damage to the property at the time the initial complaint is filed***, not the insurance policy limits or the value of the property.") (citing *Hartford Ins. Group v. Lou–Con, Inc.*, 293 F.3d 908 (5th Cir. 2002)) (emphasis added); *Patnett v. State Farm Fire & Cas. Ins. Co.*, Civil Action No. 09–523, 2009 WL 1707117, at *3 (E.D. La. June 15, 2009) (same).

While this Court knows the value (or the limit) of the dwelling coverage, it does not know—that is, Liberty has not proven—the value of the plaintiffs' denied claim for dwelling coverage or the estimated damage to the plaintiffs' house. And the allegation that Ms. Autry advised Liberty that the approximate value of the home was $50,000 when she applied for coverage (*see* Doc. 1-1, ¶ 6), an amount far below the jurisdictional minimum, does not assist Liberty in reaching the amount in controversy threshold. *Contra Riley v. Republic Fire & Cas. Ins. Co.*, Civil Action No. 10–691–BAJ–DLD, 2011 WL 1598572, at *2 (M.D. La. Mar. 29, 2011) (denying motion to remand where the plaintiff—unlike the plaintiffs here—"estimated the damage to be the value of the home, ***which she estimate[d] to be the value of the policy limits***. Those limits were provided by defendant in the notice of removal, along with the amount paid out thus far, leaving well over $75,000 at issue on property damages alone, before taking into

consideration penalties or other items of damage such as loss of use.") (emphasis added), *report & recommendation adopted*, 2011 WL 1598379 (M.D. La. Apr. 27, 2011).[7]

### b. Loss of use coverage or other amounts already paid to the plaintiffs under the policy.

Further, Liberty cannot aggregate amounts already paid to the plaintiffs under the policy, such as for loss of use (*see, e.g.*, Doc. 10 at 2 & 6-10), to any other amounts in dispute to reach the minimum amount in controversy. *See, e.g., Riley*, 2011 WL 1598572, at *2 (where the plaintiff estimated damage to the home was equal to the value of policy limits, deducting amounts "paid out thus far" under the policy before determining amount in controversy); *Mercadel v. Fidelity & Deposit Co. of Md.*, Civil Action No. 07-6514, 2008 WL 2436757, at *4 (E.D. La. June 13, 2008) ("Defendant contends that the value of the three separate insurance polices, which equals $72,000 are in controversy. The problem with Defendant's argument is that two of the three

---

[7] Reliance on the face value of the dwelling coverage is further inapplicable here because although Liberty initially disputed the validity of the policy (*see, e.g.*, Doc. 2 at 2-3), it later offered to reform the policy and, moreover, Liberty is not seeking a declaration that the policy is invalid. Liberty, instead, has chosen to argue that the plaintiffs' decision to cash Liberty's December 27, 2011 Check (*e.g.*, Doc. 8-1, Ex. A) resolves their claims entirely (*see* Doc. 2 at 2-3). *See, e.g., Friedman v. New York Life Ins. Co.*, 410 F.3d 1350, 1357 (11th Cir. 2005) (reliance on the face value of a policy to determine amount in controversy is only applicable where a case either involves "a dispute about the validity of the policy"—distinguishing *Guardian Life Insurance Co. v. Muniz*, 101 F.3d 93, 94 (11th Cir. 1996) (per curiam), and *New York Life Insurance Co. v. Swift*, 38 F.2d 175, 176 (5th Cir. 1930) (in which the insurer sought to cancel the policy)—*or* where "the scope of coverage for a claim [ ] put[s] the face amount of policy at issue"—distinguishing *C.E. Carnes & Co. v. Employers' Liability Assurance Corp.*, 101 F.2d 739, 741 (5th Cir. 1939) (where "the insurer sought a declaratory judgment against all claims to the policy by those who suffered losses in the explosion")); *see also Zapata*, 2012 WL 3527731, at *2-3 (noting, "Insurance policy limits are relevant to determining the amount in controversy when the validity of the entire policy is at issue or the value of an underlying tort claim exceeds the limits. However, where a case involves the applicability of an insurance policy to a particular occurrence, the jurisdictional amount in controversy is measured by the value of the underlying claim not the face amount of the policy[,]" and then determining that because, there, the plaintiff's "allegations relate[d] to the applicability of [the] Policy [ ] to a particular occurrence, . . . the amount in controversy [is] the value of [the] claims, not the policy limits") (internal citations and quotation marks omitted).

policies have been paid out in the maximum. Each of Plaintiffs' three polices had a maximum pay out of $24,000. [The third policy] was not paid out in the maximum, Defendants paid $2,099 on this policy, leaving a potential of $21,901 unpaid. As such, the only amount in controversy in respect to the actual pay out on the insurance policies is $21,901, and not $72,000, because $50,099 has already been paid by Defendant before any suit was brought by Plaintiffs.").

### c. *Punitive damages and attorneys' fees.*

Through their complaint, the plaintiffs request punitive damages in connection with all four of their counts (*see* Doc. 1-1 at 4-7) and attorneys' fees and costs in connection with Counts I and IV (*see id.* at 4, 7). The evidence before the Court is insufficient to use either request to "amp up" the jurisdictional value of this lawsuit.

- <u>Punitive damages.</u>

While "[p]rospective punitive damages must be considered when calculating the amount in controversy 'unless it is apparent to a legal certainty that such cannot be recovered[,]'" *Sharritt v. Liberty Mut. Ins. Co.*, No. Civ.A. 05 0164 CG B, 2005 WL 1505994, at *2 (S.D. Ala. June 24, 2005) (quoting *Holley Equip. Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987) (per curiam)); *Eze v. American Equip. Leasing, LLC*, No. 6:11–cv–1213–Orl–22DAB, 2011 WL 4481436, at *4 (M.D. Fla. Sept. 27, 2011) (same), "the mere possibility of a punitive damages award is insufficient to prove that the amount in controversy requirement has been met[,]" *Geller v. Hai Ngoc Duong*, No. 10cv1876–BTM (CAB), 2010 WL 5089018, at *2 (S.D. Cal. Dec. 7, 2010) (internal citations omitted). In *Sharritt*, for example, this Court granted a motion to remand where the "defendant suggest[ed] that punitive damages of at least $80,000 could be awarded,

14

[but] offered nothing to support th[at] contention." 2005 WL 1505994, at *2 ("Given that defendant has only shown by a preponderance of the evidence that the amount in controversy includes $6,700 in compensatory damages, punitive damages would have to be more than ten times the compensatory damages to satisfy the jurisdictional minimum. The court finds nothing to support such an award.")

Given the facts of this case, in which Liberty attempted to compromise with the plaintiffs regarding a claim it initially determined should not be paid at all, vague requests for punitive damages cannot serve as evidence in support of increasing the amount in controversy. *Contra Blackwell v. Great Am. Fin. Res., Inc.*, 620 F. Supp. 2d 1289, 1290-91 (N.D. Ala. 2009) (finding that where a complaint "charge[d] a conspiracy that continued for more than two years and, in the process, syphoned away much of an elderly man's life savings under false pretenses" and its underlying factual allegations already placed more than $23,000 in controversy, a request for punitive damages for what "may be awarded" made up the difference: "When the punitive damages claims for what "may be awarded" are considered in relation to both the compensatory damages claims and the conduct alleged, a punitive award of slightly more than double the compensatory damages claim would occasion an amount in controversy that exceeds the jurisdictional minimum. Such an amount for punitive damages is uncontroversially within the limits of the Due Process Clause.") (citations omitted).[8]

---

[8] Similarly, the plaintiffs' assertions that Liberty's actions have caused them "severe" or "extreme" "emotional distress and mental anguish" (*see* Doc. 1-1 at 4-6) are devoid of factual support or elaboration and, thus, too cannot be factored into the amount-in-controversy analysis. *See, e.g., Goodin v. Fidelity Nat'l Title Ins. Co.*, No. 3:11–cv–149–J–32JRK, 2012 WL 473913, at *3 (M.D. Fla. Feb. 14, 2012) (legal certainty standard) ("Even assuming arguendo that any of his non-contract claims would support a claim for mental distress damages, his allegations of 'mental anguish and stress' are impermissibly vague.");

- Attorneys' fees and costs.

While the plaintiffs—without citing legal authority—have requested attorneys' fees and costs in association with two claims,

> Alabama follows the "American Rule," which generally requires each party to pay its own attorney's fees. *See Ex Parte Horn*, 718 So.2d 694, 702 (Ala. 1998). And "when there is no direct legal authority for an attorney's fee, a request for a fee [may not] be included in the computation o[f] the jurisdictional amount." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155 (9th Cir. 1998) (quoting CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3712, at 178 (3d ed. 1985)).

*Smith v. GTE Corp.*, 236 F.3d 1292, 1305 (11th Cir. 2001) (also noting that "a clearly established common law basis for awarding attorney's fees may also justify including a reasonable estimate of requested attorney's fees in determining the amount in controversy") (citations omitted); *compare Blackwell*, 620 F. Supp. 2d at 1291 ("properly credit[ing]" a plaintiff's "claim for statutory attorney's fees under the Alabama Securities Act[,]" made under one count, to the amount in controversy) (citing, *inter alia*, *Missouri State Life Ins. Co. v. Jones*, 290 U.S. 199, 202 (1933) (where state statute created right to attorney's fees, such fees are credited to the amount in controversy for jurisdictional purposes)), *with John L. Crosby, Inc.*, 2009 WL 1941258, at *3 ("Simply stating that he may be entitled to [statutory] penalties is not enough. Plaintiff would

---

*Robinson v. Kmart Corp.*, Civil Action No. 11–12–RET–DLD, 2011 WL 2790192, at *3 (M.D. La. Apr. 28, 2011) ("vague allegations" of, for example, "mental anguish" fail to "satisfy the facially apparent test for proving amount in controversy"), *report & recommendation adopted*, 2011 WL 2937952 (M.D. La. July 14, 2011); *Monkhouse v. Stanley Assocs., Inc. Short Term Disability Income Plan for Employees of Stanley Assocs., Inc.*, Civil Action No. H–10–3052, 2010 WL 5391273, at *2 (S.D. Tex. Dec. 16, 2010) ("Plaintiff's conclusory claims for mental anguish and emotional distress, and unspecified attorney's fees, do not place Defendant on notice that the case is removable. Even though attorney's fees, mental anguish and emotional distress may factor into the total amount in controversy, the pleading here does not comment in any fashion on the extent of [Plaintiff's] injuries or the number of billable hours spent by [the] attorney in the matter.") (citation and internal quotation marks omitted).

have needed to present actual facts indicating the propriety of such penalties and indicating why he is actually entitled to those penalties.") (citations omitted) *and Thompson v. CitiMortgage, Inc.*, No. 12 C 1156, 2012 WL 2254293, at *3 (N.D. Ill. June 14, 2012) ("Although this is a contractual dispute, nowhere in the contract does it state that the mortgagor can claim reasonable attorneys' fees for the lender's breach. Plaintiff has not shown that she has a right to attorneys' fees should she prevail, and therefore attorneys' fees cannot be used to determine whether the amount in controversy has been met.").

Because neither the plaintiffs nor Liberty have provided the Court with any evidence to show that the plaintiffs are entitled to attorneys' fees and costs contractually or under a statute or the common law, the plaintiffs' requests for fees and costs also cannot serve as evidence in support of increasing the amount in controversy.

   d.   ***Plaintiffs' counsel's pre-suit demands.***

Finally, while not as clean as a post-suit/pre-removal demand, that the plaintiffs' counsel twice wrote to Liberty (in September, 2011 and October, 2011 (*see* Doc. 8-2, Exs. A & B)), demanding $74,0000, less than the jurisdictional minimum, to settle the entire dispute is further evidence in support of the fact that the minimum amount in controversy has not been met. *Cf. Wallace v. Kentucky Fried Chicken*, Civil Action No. 08-248-KD-B, 2008 WL 4531773, at *6 (S.D. Ala. Oct. 9, 2008) (DuBose, J.) ("While Plaintiff did not specify any damage amount in his original Complaint, he stipulated—pre-removal—that he was not seeking damages in excess of $75,000. This is confirmed by Defendant's own attachment of a May 8, 2008 e-mail[—an email sent the day before the matter was removed—]from Plaintiff's counsel to Defendant's

17

counsel, to the removal notice.  Even with the restrictions of *Poore*[9] and *St. Paul*,[10] this case is distinguishable.  The holdings in those cases focused on post-removal events to reduce the damages initially sought in the original complaint, to a damage amount below the jurisdictional threshold, in an attempt to circumvent the court's jurisdiction.  Plaintiff has consistently stated that he seeks less than the jurisdictional amount.  In this sense, there has been no reduction, nor attempt at reduction, of an original damage amount.") (footnotes added); *compare id.*, *with Exum v. State Farm Fire & Cas. Co.*, 821 F. Supp. 2d 1285, 1294-95 (M.D. Ala. 2011) (rejecting plaintiffs' affidavit "wherein they agree to stipulate that they will enter into an irrevocable agreement to limit the damages they seek in this action to $74,000," noting that "[s]uch a stipulation does not support remand because it has no bearing on the salient issue, namely, the amount in controversy at the time the suit was filed and removed") (citations omitted) *and id.* (further noting that "[w]hile post-removal evidence is permissible, 'the jurisdictional facts that support removal must be judged at the time of the removal, and any post-petition affidavits are allowable only if relevant to that period of time[,]'" or, "[p]ut another way, the court may consider information submitted after the case has been removed only if it informs its determination of whether subject matter jurisdiction existed at the time of removal") (quoting *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 949 (11th Cir. 2000)).

---

[9]     *Poore v. American-Amicable Life Ins. Co. of Tex.*, 218 F.3d 1287, 1290-1291 (11th Cir. 2000), *implied overruling (on other grounds) recognized by*, *Alvarez v. Uniroyal Tire Co.*, 508 F.3d 639, 640 (11th Cir. 2007).

[10]    *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938).

### Conclusion

*Roe*'s direction to use "judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements[,]" 613 F.3d at 1062, is not an invitation to speculate as to amount in controversy.  Keeping in mind the narrow construction afforded the removal statute, a defendant must still carry its burden to prove that a plaintiff's suit—in this case—more likely than not exceeds $75,000.  Liberty has failed to shoulder that burden.  Accordingly, after careful consideration of the parties' briefing and the pleadings, and for the reasons set forth above, it is **RECOMMENDED** that the motion to remand (Doc. 8) be **GRANTED** and that this matter be **REMANDED** to the Circuit Court of Wilcox County, Alabama. Because the undersigned has determined that this Court lacks subject-matter jurisdiction, it is **FURTHER RECOMMENDED** that the motion to dismiss (Doc. 2) be **DENIED WITHOUT PREJUDICE** to being reasserted in the state court after remand.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE and ORDERED** this the 16th day of November, 2012.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND <u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

*l.     Objection.*   Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).[11]   The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in S.D. Ala. L.R. 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[12] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

*2.     Transcript (applicable Where Proceedings Tape Recorded).*  Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[11]     All Fifth Circuit Unit B decisions from any date are binding precedent in the Eleventh Circuit.   *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

[12]     Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"   FED. R. CIV. P. 72(b)(2).